IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No. 1:16-cr-00357 |
| v. : | |
| : | (Judge Kane) |
| CHAD MICHAEL STONER and : | |
| EMILY WINAND, : | |
|     Defendants : | |

## MEMORANDUM

Now before the Court are cross motions in limine filed by the Government (Doc. No. 77), and Defendant Stoner (Doc. No. 82). For the reasons set forth below, the Court will grant the Government's motion, and deny Defendant Stoner's motion without prejudice.

**I.   BACKGROUND**

On August 2, 2017, a grand jury returned a multi-count Superseding Indictment against Defendants Chad Michael Stoner ("Stoner"), and Emily Winand ("Winand"). (Doc. No. 63.) The Superseding Indictment charged Stoner with transmitting threats in interstate commerce (Counts 1 and 2), mailing threatening communications (Counts 3 and 4), and being a felon in possession of firearms and ammunition (Counts 5, 6, 8, and 9). On September 18, 2017, the Government filed a motion in limine seeking to exclude any evidence or argument relating to an advice of counsel defense to the felon in possession charges, with a supporting brief. (Doc. Nos. 77, 78.)   Defendant Stoner filed his own motion in limine to preclude certain evidence he expects the Government to offer at trial, with a supporting brief, on September 19, 2017. (Doc. Nos. 82, 83.)

After a telephone conference with counsel regarding the motions, the Court scheduled an

1

evidentiary hearing on the pending motions in limine for October 2, 2017. (Doc. No. 86.) On September 27, 2017, Defendant Stoner filed a brief in opposition to the Government's motion in limine. (Doc. No. 89.) On October 2, prior to the scheduled hearing, counsel requested a conference with the Court. At the conference Defendant Stoner's counsel represented that he had no evidence to offer on the advice of counsel defense to the felon in possession charge, but rather, intended to present a mistake of fact defense to those charges. Defendant Stoner's counsel also stated that he had not prepared any testimony to present at the scheduled hearing. In light of that representation, the Court cancelled the scheduled hearing and directed the Government to respond to Defendant Stoner's motion in limine, and in addition, to Defendant Stoner's arguments in opposition to the Government's motion in limine, by October 10, 2017. (Doc. No. 94.) The Court further directed Defendant Stoner to file a reply brief by October 16, 2017. (Id.)

After receiving a one-day extension of time to file its brief, the Government filed its response to Defendant Stoner's motion in limine on October 11, 2017. (Doc. No. 105.) Defendant Stoner filed his brief in reply to the Government's brief on October 16, 2017, addressing only the Section 922(g) burden of proof issue raised by way of the Government's motion. (Doc. No. 106.) Accordingly, both motions in limine are ripe for disposition.

**II.     The Government's Motion in Limine Seeking to Preclude Defendant from Introducing a Defense to the Felon in Possession Charges Based on Mistake of Fact**

In its motion in limine, the Government argues that a mistake of fact defense is unavailable with regard to the felon in possession charges asserted against Defendant Stoner, maintaining that such a defense is only available when a defendant is charged with a specific

intent crime, which it asserts does not include a violation of 18 U.S.C. § 922(g)(1). (Doc. No. 105 at 15-16.)

18 U.S.C. § 922(g)(1) provides, in relevant part, as follows:

It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition . . . which has been shipped or transported in interstate or foreign commerce.

In 1986, Congress enacted the Firearms Owners' Protection Act ("FOPA"), Pub. L. 99-308, 100 Stat. 449. FOPA consolidated certain laws placing firearms restrictions on felons, and while it did not add a scienter requirement to the operative provisions of the statute (here, § 922(g)(1)), it modified the relevant penalty provision, 18 U.S.C. § 924(a)(2), by adding the word "knowingly." Accordingly, 18 U.S.C. § 924(a)(2) now reads "[w]hoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." The issue raised in this case is whether the "knowingly" requirement of Section 924(a)(2)'s penalty provision extends to the element of Section 922(g)(1) regarding felony status, such that the Government must prove that the defendant "knew" of his felony status.

In that regard, the Government argues that to prove a violation of Section 922(g)(1), it must prove beyond a reasonable doubt that (1) the defendant has been convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year; (2) after the conviction, defendant knowingly possessed a firearm; and (3) defendant's possession of a firearm was in or affecting interstate or foreign commerce. (Doc. No. 78 at 1-2.) Stated differently, the

Government, citing United States v. Dodd, 225 F.3d 340 (3d Cir. 2000),[1] maintains that, in order to prove a violation of Section 922(g)(1), it is required to prove only that a defendant who has been convicted of a felony knowingly possessed a firearm, not that a defendant possessed a firearm with knowledge that his or her possession was unlawful. (Id. at 2.) Further, the Government argues that, even assuming, after Dodd, it could be required to prove knowledge that a defendant's possession of a firearm was unlawful (or, in other words, that a defendant knew he was a felon), and therefore, that Stoner could properly proffer evidence seeking to cast doubt on proof of that element, Defendant Stoner has not clearly identified the basis for any alleged mistake of fact on that point here. (Doc. No. 105 at 16.)

In opposition to the Government's motion, Defendant Stoner argues that Dodd is distinguishable from the instant case in that Dodd involved a defendant's assertion of justification as a affirmative defense, as opposed to a defense of lack of knowledge that a prior conviction was a felony. (Doc. No. 89 at 2.) Instead, Defendant Stoner relies on the United States Supreme Court's decisions in United States v. Staples, 511 U.S. 600 (1994), and United States v. X-Citement Video, Inc., 513 U.S. 64 (1994), in support of his position that the word "knowingly" in 18 U.S.C. § 924(a)(2), the penalty provision applicable to violations of Section 922(g)(1), modifies both the elements of possession of the firearm and status as a convicted felon. (Id. at 1-2.) Accordingly, citing an unpublished decision from the Eastern District of

---

[1] In Dodd, the Third Circuit stated that with regard to a Section 922(g)(1) charge, "[t]he requirement that the government must show that the defendant 'knowingly possessed a firearm' means only that the government must prove the defendant's awareness that he possessed the firearm; the government need not demonstrate that the defendant possessed the firearm with an intent to cause harm, or with knowledge that such possession was unlawful." Dodd, 225 F.3d at 344.

4

Pennsylvania, United States v. Kitsch, No. 03-594-01, 2008 WL 2971548, at *5-*7 (E.D. Pa. Aug. 1, 2008), Defendant Stoner argues that the Government should be required to prove beyond a reasonable doubt that he knew he was a felon, and that he should be permitted to offer evidence that he had a good faith basis to believe he was not a felon. (Doc. No. 89 at 3.)

In Kitsch, the court found that the word "knowingly" in Section 924(a)(2), when applied to Section 922(g)(1), modified both the elements of possession of a firearm and status as a convicted felon. Kitsch, 2008 WL 2971548, at *7. In doing so, the court in Kitsch relied on three propositions set forth in Staples and X-Citement Video:

> First, where a particular element of a criminal statute separates criminal conduct from otherwise lawful conduct, there is a presumption, rebuttable only by clear evidence of congressional intent, that a scienter requirement should attach to that element. Second, where the potential criminal penalties for violation of the statute are severe, that presumption is heightened. Finally, where the lack of a scienter requirement would raise serious doubts about the constitutionality of a criminal statute, we should read the statute as containing such a requirement unless that reading is contrary to the statute's plain terms.

Kitsh, 2008 WL 2971548, at *3.

At the conference held with counsel on October 2, 2017, the Government indicated its reliance on a decision from the United States Court of Appeals for the Fourth Circuit, United States v. Langley, 62 F.3d 602 (4th Cir. 1995), which held that Staples and X-Citement Video do not require the imposition of a scienter requirement as to 922(g)(1)'s felony conviction element.[2]

---

[2] The court in Langley relied on three bases for its decision. First, in distinguishing Staples and X-Citement Video, the court found that unlike ordinary citizens who possess a reasonable expectation that they are free from regulation "when possessing a firearm unaware of its automatic firing capability as in Staples and when trafficking in sexually explicit, though not obscene, materials involving adults as in X-Citement Video," the "same cannot be said with respect to a felon who possesses a firearm, because a person who pleads guilty to, or is convicted by a jury of, a felony cannot, thereafter, reasonably expect to be free from regulation when possessing a firearm." Langley, 62 F.3d at 607. Second, the court stated that Staples and X-

5

The Government urges the Court to follow Langley on this point and hold that it bears the burden of proving only that the defendant knowingly possessed a firearm, not that he did so with knowledge that his possession was unlawful.

After careful review of the briefs of the parties and the relevant precedent, the Court is constrained to find that in this circuit, the Government's burden of proof on a Section 922(g)(1) charge is governed by Dodd. While the Court acknowledges the potential merits of the argument on the other side, the Third Circuit in Dodd specifically defined the burden of proof applicable to a Section 922(g)(1) charge, stating that "[t]he requirement that the government must show that the defendant 'knowingly possessed a firearm' means only that the government must prove the defendant's awareness that he possessed the firearm; the government need not demonstrate that the defendant possessed the firearm with an intent to cause harm, or with knowledge that such possession was unlawful." Dodd, 225 F.3d at 344. Accordingly, the Court will grant the Government's motion in limine and preclude any evidence or argument regarding a mistake of fact defense to the Section 922(g)(1) charge.

### III. Defendant Stoner's Motion in Limine Seeking to Preclude Evidence Based on Federal Rules of Evidence 403 and 404(b)

In his motion in limine, Defendant Stoner seeks to exclude three categories of evidence: (1) any evidence regarding his membership in a militia; (2) any evidence that two firearms

---

Citement Video did not address the issue of "extending a mens rea requirement to a defendant's felony status or . . . to an interstate nexus element." Id. Finally, the court found that "the statutes at issue in Staples and X-Citement Video did not have long-standing, firmly entrenched, uniform judicial interpretations that necessitated the application of the presumption that 'Congress acts with knowledge of existing law, and that absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction.'" Id. (citation and quotation omitted).

allegedly possessed by defendant were obtained in a burglary; and (3) five statements made by him during recorded telephone conversations relating to violence against law enforcement officials.[3] (Doc. No. 82 at 2-3.) In response, the Government represents that it has no intention of introducing evidence relating to defendant's membership in a militia or evidence relating to a burglary. (Doc. No. 105 at 1-2.) In light of the Government's representation, there appears to be no disagreement between the parties as to evidence relating to Defendant's membership in a militia or evidence relating to firearms obtained in a burglary. Accordingly, Court will deny those portions of Defendant Stoner's motion <u>in limine</u> without prejudice to his ability to raise those issues again at trial, if appropriate. The Court turns to the issue regarding statements made by Defendant.

### A. Defendant's Argument

As to the five statements sought to be excluded by Defendant Stoner, he argues that even assuming that the Government can articulate a purpose for the introduction of such statements pursuant to Federal Rule of Evidence 404(b), any probative value of such evidence is substantially outweighed by the danger of unfair prejudice under Federal Rule of Evidence 403. (Doc. No. 83 at 5.) Defendant Stoner argues that there is a remote connection, if any, between

---

[3] The specific statements referenced by Defendant Stoner are: (1) in reference to an assault on a law enforcement officer, "if Trev's shots would have been two inches more to the left, they would have been having a party" or words to that effect; (2) in reference to the "system" being oppressive, "I can understand why people kill police officers" and "this is why people are killing cops" or words to that effect; (3) in a conversation with his mother, his statement that "I head-butted Chief Sible from the West York Borough Police Department" or words to that effect; (4) in reference to bullet proof glass, "those 5.56 Tungston Carbide Roufis rounds will tear right through it like a hot knife through butter" or words to that effect; and (5) in reference to his frustration over being incarcerated, "I wish all sheriffs, cops and judges would shoot themselves in the face" or words to that effect. (Doc. No. 82 at 2-3.)

7

the statements and the specifics of any alleged threat, and maintains that due to the nature of the statements there is a significant risk of the danger of unfair prejudice as a result of the introduction of such evidence. (Doc. No. 83 at 6.)

    **B.**    **Government's Argument**

In response to Defendant Stoner's motion, and before specifically addressing the five statements at issue in Defendant's motion, the Government represents that, in connection with the threat charges asserted against Defendant Stoner, it intends to introduce at trial evidence that in 2016 and 2017, Defendant Stoner made threats to injure police officers and Conewago Township employees, arguing that this evidence is intrinsic to the threat charges lodged against him at Counts 1 and 2 of the Superseding Indictment. (Doc. No. 105 at 2.) Alternatively, the Government argues that the Court should admit this evidence under Federal Rules of Evidence 403 and 404(b) as evidence of motive and intent. (Id. at 2.)

The Government summarizes the August 3 and 4, 2016 evidence it seeks to introduce relative to the threat charges asserted against Defendant Stoner. Specifically, the Government represents:

> Stoner made it a habit of attending and disrupting Conewago Township meetings. During those meetings, Stoner became aggressive and hostile. In response, Township Supervisors requested that the police be present during the meetings. The Township also took other security measures such as installing security cameras in and outside the township building. Moreover, Township Supervisors started carrying handguns out of concern for their safety.
>
> On August 3, 2016, during a Township meeting, Stoner became disruptive. The Township Supervisor, Loretta Willhide, called the police. Winand [Stoner's girlfriend] was present during the meeting and she used her phone to video record the incident. In the recording can be seen Stoner refusing to comply with the police's request that he leave the meeting. The police officer arrested Stoner for disorderly conduct. As the police officer handcuffed Stoner, Stoner is heard

8

on the recording stating, "[Y]ou know that safety contingency plan? You're gonna need it."

The following day, August 4, 2016, Stoner was released from custody. Stoner returned to the Township Building. As on the previous day, Stoner was accompanied by Winand who recorded the incident. On the recording, Stoner is seen wearing khaki pants, a light brown t-shirt with the wording "Conewago Militia" displayed on the front, a thigh holster with what appears to be a handgun, and a sheath strapped to the other thigh with a knife. Stoner approached the counter and asked to speak with Township Manager Lou Ann Bostic. When Bostic approached the counter window, Stoner made a series of requests for information. Bostic is seen on the video taking notes related to Stoner's request. Stoner is then heard stating, ". . . of course you know what I can tell you. I have a feeling, now this is just my personal belief. I think if she [Loretta Wilhide, Township Supervisor] continues to act in the way that she is, I think Houston, Texas is gonna turn into Conewago Township. After hearing this statement, Bostic looks up at Stoner who then states, "that is where they shot all those cops." Stoner was referring to the events that occurred on July 7, 2016, in Dallas, Texas. On that date, a lone gunman ambushed and killed five police officers in Dallas. The gunman wounded several other police officers. Stoner then states to Bostic, "Call Loretta [the Township Supervisor who called the police the night before] and tell her I'm out." Stoner then laughs as he leaves the building.

After Stoner left, Bostic called the police who came to the Township Building. Police filed charges of terroristic threats against Stoner. Police also obtained an arrest warrant. Stoner surrendered himself to police at his attorney's office. Police arrested Stoner. He was arraigned on the terroristic threats charges and detained in York County Prison.

(Doc. No. 105 at 3-5.)

The Government argues that the above evidence of the events of August 3 and 4, 2016, which it intends to introduce at trial, is intrinsic to the Government's threat charges. Specifically, the Government maintains that "by the time that Stoner was charged, arrested, arraigned, and detained, he was aware that the police and Township officials regarded his statements to Bostic, the Township Manager, as a threat. In spite of this, Stoner and Winand agreed that Winand would post the video of the threat on YOU TUBE, which Winand did on August 10, 2016." (Id.

9

at 5.)

The Government also represents that it seeks to introduce evidence relating to a threat charge based on events occurring in 2017; specifically, it maintains that in connection with the FBI's execution of a search warrant of Stoner's residence in February 2017, agents found handwritten notes containing the names and addresses of police officers, as well as the names of children of the officers, and a location where the wife of a police officer shopped, in a safe in the bedroom shared by Stoner and Winand. (Id. at 6.) The Government states that the agents did not believe that the notes fell within the scope of the search warrant, so they left the notes in the safe, but photographed them before leaving. (Id.) The Government represents that after securing a search warrant for the notes, the agents returned to Stoner's residence, but the handwritten notes were no longer contained in the safe. (Id.) The Government seeks to introduce photographs of the notes. (Id. at 13, Exh. 9.)

In addition, the Government represents that it proposes to introduce evidence of multiple instances where Stoner threatened police, including the following:

> 1. In a recorded telephone call, Stoner tells his mother, Wanda Stoner, that, "when you have no form of legal recourse, you engage in vigilante justice. And that's where you go out and shoot a bunch of fucking cops" (Id. at 11, Exh. 1);
>
> 2. In a September 7, 2016 recorded call, Stoner and Winand discussed the Conewago Township's purchase of bullet-proof glass. Stoner states that ".556 Tungsten carbine Raufoss rounds will fucking tear through that thing like a hot knife through butter" (Id. at 12, Exh. 2);
>
> 3. In a September 11, 2016 letter to Winand, Stoner stated "I'd settle for seeing all the cops, Klinger [Zoning Officer], Lou Ann [Township Manager], Larry Lew and Carol, and all other asswipes that help to get me here die slowly and painfully. That would be pretty cool" (Id. at 12, Exh. 3);
>
> 4. In a September 17, 2016 recorded call, Stoner refers to police as

10

"domestic terrorists" with badges and in uniforms. He further states that police are guilty of "high treason" "punishable by death" and that he doesn't care if he's tried for shooting a "fucking cop" (Id. at 12, Exh. 4);

5. In a letter to Winand, dated September 21, 2016, Stoner stated, ". . . get as much of the 5.56 armor piercing Raufoss that you can. That is the best ammo that he has for the AR. Those are the 'cop killers' which I think we should stock up on" (Id. at 12, Exh. 5);

6. In a December 8, 2016 recorded call, Stoner stated, "Every time I see . . . the news that says a cop was shot or killed, I fucking get a little bit of a chuckle out of it . . . ." (Id. at 13, Exh. 6);

7. In a March 13, 2017, recorded call, Stoner again referred to police as domestic terrorists with badges (Id. at 13, Exh. 7);

8. On April 30, 2017, he stated in a recorded call, ". . . if I get out, I'm gonna take care of anything that needed to be taken care of . . . watch me . . . my fucking day is coming" (Id. at 13, Exh. 8);

9. On September 1, 2015, Stoner told police, "you do realize your days are numbered? They're all comin', what goes around, comes around" (Id. at 13, Exh. 9);

10. In a video dated August 3, 2016, Stoner tells a police officer, "you know that safety contingency plan? You're gonna need it" (Id. at 13, Exh. 11).[4]

**C. Discussion**

As a general rule, all "[r]elevant evidence is admissible." Fed. R. Evid. 402. Evidence is "relevant" if its existence simply has some "tendency to make a fact more or less probable than it

---

[4] This recitation of statements the Government intends to introduce at trial appears to include the essence of two of the statements that are the basis of Defendant Stoner's motion: (1) "when you have no form of legal recourse, you engage in vigilante justice. And that's where you go out and shoot a bunch of fucking cops;" and (2) regarding Conewago Township's purchase of bullet-proof glass, ".556 Tungsten carbide Raufoss rounds will fucking tear through that thing like a hot knife through butter." The Government's description of evidence it intends to introduce does not include three of the statements sought to be excluded by Defendant: (1) "if Trev's shots would have been two inches more to the left, they would have been having a party;" (2) "I head-butted Chief Sible from the West York Borough Police Department;" and (3) "I wish all sheriffs, cops and judges would shoot themselves in the face." (Doc. No. 82 at 2-3.)

11

would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by the danger of . . . unfair prejudice. . . ." Fed. R. Evid. 403.

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). However, such acts may be introduced if presented for another purpose, such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or lack of accident." Fed. R. Evid. 404(b)(2). Accordingly, under Rule 404(b), prior act evidence is inadmissible unless the evidence is (1) offered for a proper non-propensity purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested. United States v. Caldwell, 760 F.3d 267, 277-78 (3d Cir. 2014).

In United States v. Repak, 952 F.3d 230, 241 (3d Cir. 2017), the Third Circuit characterized Rule 404(b) as a "rule of exclusion, meaning that it excludes evidence unless the proponent can demonstrate its admissibility, but it is also 'inclusive' in that it does not limit the non-propensity purposes for which evidence can be admitted." In Repak, the Third Circuit further commented on the interplay between Rule 404(b) and Rule 403, stating that if evidence has a proper Rule 404(b) purpose, "[e]vidence cannot be excluded under Rule 403 merely because its unfairly prejudicial effect is greater than its probative value. Rather, it can be kept out only if its unfairly prejudicial effect 'substantially outweigh[s]' its probative value." Repak,

12

852 F.2d at 246 (citation omitted).

However, "intrinsic" evidence is not subject to Rule 404(b).  United States v. Green, 617 F.3d 233, 245 (3d Cir. 2010) (noting that there is "no 'other' wrongful conduct at issue [with intrinsic evidence]; [rather,] the [intrinsic] evidence is admissible as part and parcel of the charged offense").  The Third Circuit has classified two types of evidence as intrinsic: (1) evidence that "directly proves" the charged offense; and (2) "uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate commission of the charged crime."  Id. at 248-49 (citation and quotation omitted).

In Counts 1 and 2 of the Superseding Indictment, Defendant Stoner is charged under 18 U.S.C. § 875(c) with transmitting a threat in interstate commerce. (Doc. No. 63 at 1-3.)  The current standard for evaluating proof of a Section 875(c) charge was set forth by the Supreme Court in Elonis v. United States, 135 S. Ct. 2001, 2011 (2015).  In that case, the Supreme Court held that a defendant could not be convicted of violating Section 875(c) "solely on how his [words] would be understood by a reasonable person."  Instead, the government must prove that a defendant transmitted a communication "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat."  Id. at 2012.  Accordingly, pursuant to the Supreme Court's construction of the statute, a defendant's intent and knowledge are squarely at issue on a Section 875(c) charge.

With regard to all of the evidence described above, the Government maintains that such evidence is intrinsic to the threat charges Defendant Stoner faces. (Doc. No. 105 at 10-13.) Specifically, the Government maintains that evidence relating to Defendant Stoner's arrest on state terroristic threat charges on August 4, 2016 is admissible, as well as background evidence

13

relating to the hearing the previous day, as such evidence is intrinsic to the threat charge based on Defendant Stoner and Winand's posting on YouTube of the recording of Stoner's statements to Bostic, as it serves as evidence of Defendant Stoner's knowledge that various Township officials and the police perceived those statements as threats. (Id. at 10-11.) Further, the Government maintains that the statements of Defendant Stoner threatening the police, as well as photographs of the 2017 notes found in Stoner's safe, is similarly intrinsic to the Government's charge that Defendants Stoner and Winand transmitted the communications for the purpose of issuing a threat. (Id. at 11-13.) Alternatively, the Government argues that in the event the Court declines to find such evidence intrinsic to the threat charge, the evidence is admissible under Rule 404(b) as evidence of Defendant Stoner's motive and intent, as the key disputed issue with regard to the Section 825(c) charge will be Defendant Stoner's purpose or knowledge in issuing the YouTube communication. (Id. at 13-14.)

Defendant Stoner's reply to the Government's brief only addresses the Section 922(g) burden of proof issue relevant to the Section 922(g) charges, and therefore, he has not offered a response or objection to the majority of the evidence the Government represents that it seeks to introduce at trial. In his primary brief regarding the five statements he seeks to exclude, Defendant Stoner does not address the issue of whether the evidence is intrinsic or extrinsic to the charges asserted against him, instead assuming that such evidence is only potentially admissible pursuant to Rule 404(b), and focusing primarily on Rule 403's balancing test, arguing that any probative value of the statements is substantially outweighed by the risk of unfair prejudice. (Doc. No. 83 at 5-6.)

Upon review of the above proffered evidence and the briefs of the parties, and in light of

14

the fact that Defendant Stoner fails to even address, much less offer any objection to, the majority of the evidence proffered by the Government for admission at trial, the Court declines to make a definitive ruling on that evidence at this time. With regard to the handful of statements that form the basis of Defendant Stoner's motion in limine, the fact that the focus of the objection raised by Defendant Stoner to those statements is Rule 403-based informs the Court's decision to similarly decline to make a definitive ruling on the admissibility of those statements in advance of trial, as Rule 403 is primarily a "trial-oriented rule." In re Paoli R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1990). This is so because "a court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant for the putatively objectionable evidence . . . [p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are therefore unfair and improper." Id. For that reason, the Court will defer any determination regarding the admissibility of the statements challenged by Defendant until the time of trial. Accordingly, the Court will deny Defendant's motion in limine at this time, without prejudice to his ability to raise again at trial his Rule 403-based challenge to the admissibility of statements made by him.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, the Court will grant the Government's motion in limine and preclude any evidence or argument regarding a mistake of fact defense to the Section 922(g)(1) charge, and will deny Defendant Stoner's motion in limine at this time, without prejudice to his ability to raise the issue regarding the admissibility of statements made by him at the time of trial. An appropriate Order follows.

                                               s/ Yvette Kane
                                               Yvette Kane, District Judge
                                               United States District Court
                                               Middle District of Pennsylvania