IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHAD MICHAEL STONER,                    :
    Petitioner                            :
                                          :          No. 1:16-cr-00357-1
                                          :
v.                                      :          (Judge Kane)
                                          :
UNITED STATES OF AMERICA,               :
    Respondent                            :
                                          :

## MEMORANDUM

Presently before the Court is Petitioner Chad Michael Stoner ("Petitioner")'s motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  (Doc. No. 208.)  For the reasons that follow, the Court will deny Petitioner's motion.

## I.    BACKGROUND

On August 30, 2018, the Court sentenced Petitioner to a term of imprisonment of one hundred and fifty (150) months followed by a term of supervised release of three (3) years after Petitioner pleaded guilty to a charge of possession of a firearm by a previously convicted felon in violation of 18 U.S.C. § 922(g) and was found guilty after a jury trial of four counts related to making threats in interstate commerce in violation of 18 U.S. C §§ 371, 875(c), and 876(c). (Doc. No. 169.)  At sentencing, the Court heard evidence in support of a stolen firearm sentencing enhancement in which Special Agent Leone of the Federal Bureau of Investigation ("FBI") testified that Petitioner illegally possessed several firearms.  (Doc. No. 186 at 30-34.) Petitioner filed a notice of appeal on September 12, 2018 (Doc. No. 173), and the United States Court of Appeals for the Third Circuit later affirmed the judgment of conviction and sentence (Doc. Nos. 192, 194).  The facts underlying Petitioner's arrest and conviction are well known to the Court and were summarized by the Third Circuit on appeal as follows:

At trial, the jury heard testimony from township supervisor Loretta Wilhide, Officer Zachary Grey, township manager Lou Anne Bostic, Detective Mark Baker, FBI Special Agent Gary Leone, and Trooper Hugh Earhart. The Government also presented copies of letters Stoner sent to his girlfriend and co-conspirator Emily Winand from prison, recordings of phone calls between the two from prison, and two recordings of interactions between Stoner and township officials. Wilhide testified that Stoner, a resident of Conewago Township, frequently attended township meetings. One evening, he caused a disturbance, prompting Wilhide to call the police. Officer Grey arrested Stoner and charged him with disorderly conduct and disruption of a public meeting. The following day, Stoner and Winand went to the township building to speak to Bostic. Stoner was wearing a "long machete type knife and a holster" strapped to his leg. JA 102. Stoner demanded a written statement concerning whether township meetings were recorded and the addition of an item to a future meeting agenda addressing the "official corruption" between the police department and Wilhide and the "clear and present prejudicial attacks that she is taking upon [Stoner]." Recording at Township Building, Aug. 4, 2016, at 2:58-3:44. Stoner told Bostic that if Wilhide "continues to act in the way that she is, I think Houston, Texas, is going to turn into Conewago Township,"[1] Recording at Township Building at 4:00-4:08, explaining to herthat he was referring to "where they shot all them cops," Recording at Township Building at 4:11-4:14. Finally, as Stoner and Winand were leaving the building, Stoner told Bostic to let Wilhide know that he was "out" of jail. JA 102.Winand recorded the interaction. Bostic "was a little shaken up." JA 102. She composed herself and then called the chief of police to inform him that "Chad Stoner had just been in the office and stated what [she] felt was a threat that they should be aware of." JA 102.

After reviewing surveillance footage of the incident, Detective Baker arrested Stoner for terroristic threats. In a later prison call, Winand and Stoner discussed how Stoner said Houston rather than Dallas, where the shooting of several police officers had actually occurred, and that Stoner meant that Conewago would be like Dallas, not that Dallas would be like Conewago. In recorded phone calls from prison, Winand and Stoner discussed posting on the internet the recording of the interaction between Bostic and Stoner despite his lawyer's likely disapproval. In these discussions, Stoner remarked to Winand "once again you wonder why the people of Dallas did what they did." JA 216. Less than a week after Stoner's encounter with Bostic and his arrest, the video was posted on YouTube.

Around the same time, Stoner was the subject of a separate firearms investigation. In connection with that investigation, Trooper Earhart and Special Agent Leone searched Stoner's home, where they found a safe containing letters from Stoner to Winand and a list of names and addresses of local police officers and their families. In the letters, Stoner said that "we do need to kill more 'law enforcement['] or in other words 'domestic terrorist[s].'" JA 225; see JA 111. He expressed "hope" that "more people start killing cops again," JA 225, and referred to a quote he attributed to a founding father about replenishing the "tree of Liberty" with "the

blood of . . . Tyrants and Patriots," JA 226.   Expressing frustration with his incarceration, Stoner wrote that there are "people that are going to have hell to pay, when I do get out.  I've decided that some of them have caused more [than] enough harm to myself and my family to justify a retaliation.  What's even better is, I have a lot of time to plan."  JA 234.  Stoner's letters also directed Winand to purchase "as much of the 5.56 armor-piercing Raufoss rounds [as she could]" for his AR-15 rifle.  JA 245.  He referred to the ammunition as "the 'cop killers.'"  JA 245.

See United States v. Stoner, 781 F. App'x 81, 83-84 (3d Cir. 2019).  The Third Circuit noted, in affirming both Petitioner's conviction and the Court's application of sentencing enhancements, that "there was overwhelming evidence to support Stoner's convictions."  See id. at 87.

On April 20, 2020, the Supreme Court of the United States denied Petitioner's petition for a writ of certiorari.  Petitioner subsequently filed a counseled motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  (Doc. No. 208.)  On April 13, 2021, the Court directed the Clerk of Court to serve a copy of Petitioner's motion on the Government.  (Doc. No. 209.)

In his pending motion to vacate, Petitioner asserts: (1) that his guilty plea for possession of a firearm by a convicted felon is unconstitutional following Rehaif v. United States, 139 S. Ct. 2191 (2019) (Doc. No. 208 at 8-10), and (2) that he received ineffective assistance of counsel by both trial and appellate counsel in various regards (id. at 10-23.)  Petitioner requests an evidentiary hearing to develop the record with respect to his ineffective assistance claims.  (Id. at 23.)  After being granted an extension of time to file a response (Doc. No. 212), the Government filed its brief in opposition on May 17, 2021 (Doc. No. 213).  Petitioner subsequently filed a reply.  (Doc. No. 218.)  Having been fully briefed, the motion is now ripe for disposition.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a). However, Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing. See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)). Rather, Section 2255 is implicated only when the alleged error raises "a fundamental defect which inherently results in a complete miscarriage of justice." See Addonizio, 442 U.S. at 185. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner has one year from the time his conviction becomes final to file a Section 2255 motion. See 28 U.S.C. § 2244.

A motion under Section 2255 may not be used as a substitute for appeal. Accordingly, claims that could have been, but were not, raised on direct appeal are procedurally defaulted and may not be raised in Section 2255 proceedings. See United States v. Frady, 456 U.S. 152, 164-65 (1982). Procedural default may be excused only where a defendant can show: (1) cause for the default and prejudice, or (2) actual innocence. See Bousley v. United States, 523 U.S. 614, 622 (1988) (internal quotation marks omitted). "Cause" exists where a claim is "so novel that its legal basis is not reasonably available to counsel." See id. Actual innocence requires a showing that "no juror, acting reasonably, would have voted to find [the defendant] guilty beyond a reasonable doubt." See id.

In order to establish entitlement to relief, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).  See George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).  The first Strickland prong requires Petitioner to "establish first that counsel's performance was deficient."  See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001).  This prong requires Petitioner to show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment.  See id.  To that end, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  See id. (citing Strickland, 466 U.S. at 688).  However, "[t]here is a 'strong presumption' that counsel's performance was reasonable."  See id.

Under the second Strickland prong, Petitioner "must demonstrate that he was prejudiced by counsel's errors."  See id.  This prong requires Petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  See id. (quoting Strickland, 466 U.S. at 694).  Reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome."  See id. (quoting Strickland, 466 U.S. at 694).

Notably, Petitioner must make an adequate showing with respect to both prongs of the Strickland test in order to be entitled to relief.  See Strickland, 466 U.S. at 686.  A failure to make the required showing on either prong precludes a finding in Petitioner's favor.  See id. at 700.

III.    DISCUSSION

A.    **<u>Rehaif</u> and Procedural Default**

In <u>Rehaif</u>, the Supreme Court held that the knowledge element of 18 U.S.C. § 922(g)

"applies to both the defendant's conduct and to the defendant's status [as a career offender]."

<u>See</u> <u>Rehaif</u>, 139 S. Ct. at 2194.  Accordingly, to convict a defendant, the Government "must

show that the defendant knew he possessed a firearm and also that he knew he had the relevant

status when he possessed it." <u>Id.</u>  Here, Petitioner argues that his guilty plea for being a felon in

possession of a firearm is unconstitutional because Petitioner's indictment did not allege that

Petitioner knew he had a prohibited status when he possessed firearms.  (Doc. No. 208 at 9.)  The

Government asserts that this claim is procedurally defaulted because it was not raised on direct

appeal.  (Doc. No. 213 at 9.)  The Court agrees with the Government.

As an initial matter, the Court notes that that this Court and others have regularly

dismissed post-<u>Rehaif</u> habeas challenges on the basis of procedural default.  <u>See, e.g.</u>, <u>United

States v. Rosado</u>, No. 3:16-cr-265, 2021 WL 392102, at *3-5 (M.D. Pa. Feb. 4, 2021); <u>United

States v. Murphy</u>, No. 1:13-cr-060, 2020 WL 1891791, at *2-3 (M.D. Pa. Apr. 16, 2020); <u>see

also</u> <u>United States v. Vilella</u>, No. 16-cr-285, 2020 WL 6136139, at *2-4 (E.D. Pa. Oct. 19, 2020).

Further, it is undisputed that on direct appeal, Petitioner did not raise the issue of his knowledge,

or lack of knowledge, of his status as a person prohibited from possessing a firearm.

Accordingly, the Court finds that Petitioner's <u>Rehaif</u> claim is procedurally defaulted and,

therefore, may only be reviewed if he can establish either "cause" and "actual prejudice" or

actual innocence.  <u>See</u> <u>Bousley</u>, 523 U.S. at 622.

With regard to cause, the Court finds that Petitioner cannot establish that his claim is "so

novel that its legal basis [was] not reasonably available to counsel" at the time of his direct

appeal.  See id.  Courts have acknowledged that although Rehaif was not decided until 2019,

"arguments under Rehaif are not sufficiently novel in the § 2255 context, as the issue was

percolating in the courts for years."  See Rosado, 2021 WL 392102, at *4 (internal citation

omitted).  Petitioner also cannot establish either prejudice or actual innocence in this case.  The

record indicates that at the time of the indictment and Petitioner's guilty plea, the Government

had ample evidence of Petitioner's extensive criminal history, including no fewer than six (6)

prior convictions for crimes punishable by imprisonment for a term exceeding one year.  (PSR ¶¶

44-54) (detailing Petitioner's criminal history, including convictions for terroristic threats,

multiple assaults, fleeing a police officer, and stalking); see also 18 U.S.C. § 922(g) (stating that

it is unlawful for a person "who has been convicted in any court of, a crime punishable by

imprisonment for a term exceeding one year" to possess a firearm).  Furthermore, the record

reflects that Petitioner was, in fact, aware of his prohibited status at the time of the crime in

question because he asked a friend to hold firearms for him out of concern they might be found

by his parole officer since he was not allowed to have firearms in his own residence.  (PSR ¶ 11.)

Upon consideration of the record as a whole, the Court finds no basis to determine that

Petitioner's decision to plead guilty would have been different if the Government had

specifically alleged in the indictment, and subsequently been required to prove, Petitioner's

knowledge of his prohibited status.  See United States v. Burghardt, 939 F.3d 397, 403-05 (1st

Cir. 2019) (finding no reasonable probability that the defendant would have declined to plead

guilty had he been informed of Rehaif's knowledge requirement and noting that the receipt of

sentences exceeding one year "would certainly have made clear to Burghardt the fact that his

offenses were punishable by more than a year in prison").  Accordingly, Petitioner cannot

overcome his procedural default of this claim and is not entitled to relief.

### B.      Petitioner's Ineffective Assistance Claims

Petitioner's motion asserts that both trial counsel and appellate counsel rendered ineffective assistance in multiple ways that demand relief.  (Doc. No. 208 at 10-23.)  Petitioner asserts the following regarding the representation of trial counsel:

Ground One:       Counsel provided ineffective assistance by failing to timely move for a judgment of acquittal;

Ground Two:       Counsel provided deficient advice to Petitioner about testifying at trial;

Ground Three:    Counsel provided ineffective assistance by failing to file a motion in limine regarding Petitioner's "previous criminal charges, his conduct at prior township meetings, etc." and a motion to suppress challenging the constitutionality of the search of Petitioner's house;

Ground Four:      Counsel provided ineffective assistance by failing to object at trial to the admission and authenticity of certain letters;

Ground Five:      Counsel provided ineffective assistance by failing to advise Petitioner, prior to the entry of his plea, of his true sentencing exposure;

Ground Six:        Counsel provided ineffective assistance by failing to file a motion to dismiss the indictment;

Ground Seven:   Counsel provided ineffective assistance by failing to object to the "constructive amendment of counts two and three of the indictment"; and

Ground Eight:     Counsel provided ineffective assistance by failing to object to paragraph 28 of the PSR.

(Id. at 10-12, 13-23.)  Petitioner asserts the following regarding the representation of appellate counsel:

Ground One:       Counsel provided ineffective assistance by failing to raise a Rehaif claim on direct appeal; and

Ground Two:       Counsel provided ineffective assistance by failing to raise the issue of Petitioner's conditional guilty plea and challenge the

Court's adverse pretrial ruling of October 30, 2017 on direct
appeal.

(Id. at 12-13.)

As noted previously, a petitioner may prevail on a Section 2255 motion due to ineffective

assistance of counsel, provided that the two prongs of the analysis articulated by the Supreme

Court in Strickland v. Washington are met.  Specifically, the petitioner must demonstrate:

(1) "that counsel's performance was deficient[,]" which "requires showing that counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth

Amendment" and (2) "that the deficient performance prejudiced the defense[,]" which "requires

showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial

whose result is reliable."  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  Upon review

of Petitioner's claims, the Court finds that, under the relevant standard, Petitioner has not

demonstrated that either trial counsel or appellate counsel rendered ineffective assistance.

First, Petitioner has not demonstrated that trial counsel's performance was deficient.

Although Petitioner sets forth a lengthy list of ineffective assistance claims, Petitioner makes no

argument regarding the objective reasonableness of trial counsel's decisions upon which the

Court could find that trial counsel lacked a strategic basis for the decisions made.  See, e.g.,

Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (noting that "counsel's strategic choices

will not be second-guessed by post-hoc determinations that a different trial strategy would have

fared better"); Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002) (stating that it is "critical

that courts be highly deferential to counsel's reasonable strategic decisions"); see also Strickland,

466 U.S. at 690 (discussing the strong presumption in favor of finding that counsel's decisions

were reasonable).  Further, many of Petitioner's allegations are vague and conclusory at a

minimum, while others are flatly contradicted by the record.[1]  See Johnson v. United States, 294

F. App'x 709, 710 (3d Cir. 2008) (noting that "vague and conclusory allegations . . . may be

disposed of without further investigation").

Even if Petitioner could demonstrate that his trial counsel's performance was deficient,

Petitioner has not established that he was prejudiced by any of the alleged deficiencies.  As the

Third Circuit noted in affirming Petitioner's convictions, "there was overwhelming evidence to

support Stoner's convictions."  See Stoner, 781 F. App'x at 87 (emphasis added); see also United

States v. Parker, 621 F. App'x 109, 111 (3d Cir. 2015) (agreeing with the district court that the

defendant could not show "even the slightest probability that the outcome of the proceeding

would have been different" in light of the strength of the evidence supporting the conviction).

The only bases for relief under which Petitioner makes a clear argument regarding prejudice are

Grounds One and Two; the remaining grounds merely assert in a conclusory manner that

Petitioner was prejudiced if they raise prejudice at all.[2]  However, Petitioner's prejudice

arguments for even those two grounds fail.  Regarding Ground One,  to the extent Petitioner

_____

[1] For example, Petitioner asserts that trial counsel failed to object to paragraph 28 of the PSR in which the Government requested a sentence enhancement based on the alleged possession of eighteen (18) firearms.  (Doc. No. 208 at 22.)  However, the record indicates that trial counsel argued extensively against the calculation of the alleged number of firearms at the time of sentencing.  (Doc. No. 186 at 14-16.)  To the extent that Defendant's argument is that a sentencing enhancement reflecting possession of more than four (4) firearms was applied, there is evidence in the record to support the number of firearms alleged by the Government and, furthermore, the Third Circuit in reviewing Defendant's appeal found that the sentencing enhancements were proper.  See Stoner, 781 F. App'x at 87-88.

[2] For example, Petitioner asserts that counsel failed to inform him of his true sentencing exposure; however, Petitioner does not allege what action he would have taken otherwise.  (Doc. No. 208 at 17-18.)  Petitioner does not argue that he would not have entered into a plea agreement on the firearms charge, nor does Petitioner argue that there was any other plea agreement available to him that he could have taken rather than proceeding to trial.  (Id.)  Indeed, Petitioner does not even make a conclusory attempt at arguing prejudice on this count.

argues that the Third Circuit's review on appeal was limited to a plain error analysis because trial

counsel did not move for an acquittal, the Court's review of the record supports the Circuit's

finding that there was overwhelming evidence to support Petitioner's convictions.  Accordingly,

because "counsel cannot be deemed ineffective for failing to raise a meritless claim," see Werts

v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000), Petitioner has failed to demonstrate that his trial

counsel was ineffective for failing to move for an acquittal.  Regarding Ground Two, Petitioner

neither identifies what allegedly deficient advice he was given by trial counsel, nor establishes

that his testimony would have been favorable to him.  See Collins v. Meyers, 77 F. App'x 563,

566 (3d Cir. 2003) (noting that to prevail on an ineffectiveness claim about witness testimony, a

defendant must establish that the testimony would have been both material and favorable to

him).  In light of the foregoing, the Court finds no basis upon which to conclude that Petitioner

was prejudiced by any of trial counsel's alleged deficiencies and, therefore, that Petitioner is not

entitled to relief on his claims of ineffective assistance of trial counsel.

Petitioner's ineffective assistance claims fare no better as asserted against appellate

counsel.  Petitioner asserts that appellate counsel rendered ineffective assistance by failing to raise

a Rehaif claim on appeal.  (Doc. No. 208 at 12.)  However, at the time of Petitioner's appeal,

Rehaif had not yet been decided and it would not have been unreasonable for counsel to decline

to raise a claim that appeared meritless.  See Werts, 228 F.3d at 203 (noting that "counsel cannot

be deemed ineffective for failing to raise a meritless claim").  Furthermore, the Third Circuit has

advised that "failing to predict a change in the law is not deficient performance." See United

States v. Doe, 810 F.3d 132, 154 (3d Cir. 2015).

Regarding Petitioner's second argument (Doc. No. 208 at 13), that appellate counsel

failed to appeal the Court's pretrial ruling of October 30, 2017 precluding Petitioner from

presenting a mistake of fact defense to the firearms charge (Doc. No. 114), Petitioner once again fails to establish how appellate counsel's decision was unreasonable or how he was prejudiced by the decision.  The Court acknowledged in its pretrial ruling that its decision that a mistake of fact defense was unavailable to Petitioner was compelled by the clearly established law of this Circuit in United States v. Dodd, 225 F.3d 340 (3d Cir. 2000).  (Doc. No. 113 at 6.)  Dodd was abrogated by Rehaif; however, until Rehaif was decided, the law in this Circuit was clear that Petitioner did not have a meritorious challenge to the Court's adverse pretrial ruling. Accordingly, for the same reasons as above, it was not unreasonable for appellate counsel to fail to raise a meritless claim or fail to predict a change in the law.  Therefore, the Court finds that Petitioner is not entitled to relief on his claims of ineffective assistance of appellate counsel.

C.      **Evidentiary Hearing**

Section 2255(b) advises that a petitioner may be entitled to a hearing on his motion.  The decision to hold a hearing is wholly within the discretion of the district court.  See Gov't of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).  Where the record affirmatively indicates that a petitioner's claim for relief is without merit, the claim may be decided on the record without a hearing.  See Gov't of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985). In the instant case, the Court finds that "the motion and files and records of this case show conclusively that the movant is not entitled to relief."  See United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Forte, 865 F.2d at 62).  Accordingly, the Court finds no reason to hold an evidentiary hearing in this case.

D.      **Certificate of Appealability**

In proceedings brought under Section 2255, a petitioner cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued.  A court may not issue a COA

12

unless "the applicant has made a substantial showing of the denial of a constitutional right." See

28 U.S.C. § 2253(c)(2).  In other words, a COA should not issue unless "reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong." See Slack

v. McDaniel, 529 U.S. 473, 484 (2000).  Because the Court concludes that Petitioner's claims of

ineffective assistance are meritless and Petitioner's Rehaif claim is procedurally defaulted, the

Court finds that reasonable jurists would not disagree with the Court's assessment of Petitioner's

claims.  Accordingly, a COA will not issue in this case.

## IV.    CONCLUSION

Based on the foregoing, the Court concludes that Petitioner has not set forth any grounds

in his Section 2255 motion that merit relief and, therefore, will deny the motion.  (Doc. No. 208.)

Accordingly, the Court will not conduct an evidentiary hearing.  A certificate of appealability

shall not issue.  An appropriate Order follows.